## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMIE MOREL, obo her minor son, J.A., and HAYDEN ALEXANDER, PLAINTIFFS,** | |
| | **CIVIL NO.19-12422** |
| **V.** | **JUDGE:** |
| | **MAG:** |
| **JEFFERSON PARISH SHERIFF JOSEPH LOPINTO III, JEFFERSON PARISH CORRECTIONS BUREAU CHIEF SUE ELLEN MONFRA, AND JOHN/JANE DOE DEPUTIES, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,** | |
| **DEFENDANTS.** | |

## COMPLAINT

1.     This is a case about the failure to protect the Plaintiffs' father, a mentally ill inmate named Brian Alexander, from another younger inmate with a known propensity for violence.  On or about September 3, 2018, Brian Alexander was attacked by Press Shorter III at the Jefferson Parish Correctional Center ("JPCC"), where they were both incarcerated.  As a result of the attack, Mr. Alexander suffered a severe fracture to his skull and bleeding on the right side of his brain.  A few days afterward, Mr. Alexander died from his injuries.  His death is a tragic example of the rising tide of inmate-on-inmate violence at the JPCC, which has been fostered and encouraged by a lack of properly trained staff to monitor and control inmate behavior.  Indeed, it appears that JPSO staff had left Mr. Alexander and Mr. Shorter unsupervised

at the time of the attack, which resulted in Mr. Shorter believing there would be no repercussions for the assault.

2.      Plaintiffs are the minor son of Brian Alexander, J.A., through his natural mother, Jamie Morel, and the major son of Mr. Alexander, Hayden Alexander.  They bring this action for monetary damages and declaratory relief under 42 U.S.C. §1983, the Eighth and Fourteenth Amendments, and under state law for serious injuries, wrongful death and survival, and violations of Brian Alexander's rights.

## I.      **JURISDICTION**

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. §1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of civil rights.

4.      Plaintiff further invokes the supplemental jurisdiction of this Court to consider claims arising under state law pursuant to 28 USC § 1367.

5.      Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial number of the events giving rise to this Complaint occurred in this district.

## II.      **PARTIES**

**Plaintiffs**

6.      Plaintiff **JAMIE MOREL**, o.b.o. J.A., the minor son of Brian Alexander, is a citizen of the United States and a resident of the Eastern District of Louisiana.  **JAMIE MOREL** is the natural mother of J.A.

7.      **HAYDEN ALEXANDER** is the son of Brian Alexander, and is a citizen of the United States and a resident of the Eastern District of Louisiana.

2

**Defendants**

8.      Sheriff **JOSEPH LOPINTO III,** a person of the full age of majority and a resident of Jefferson Parish, State of Louisiana, in his individual and official capacity as the Sheriff of Jefferson Parish.  At all times described herein, **LOPINTO** was the ultimate policy-maker for the Jefferson Parish Sheriff's Office (JPSO), and was responsible for the hiring, training, supervision, discipline and control of appropriate staff to maintain the care, custody, and control of prisoners in the custody of the JPSO.  He was responsible for all staffing levels of the Jefferson Parish Correctional Center (JPCC).  He was also responsible for the supervision, administration, policies, practices, customs, operations of JPCC.  **LOPINTO** was and is a final policy maker, and at all pertinent times was acting under color of law.  He is liable both directly and vicariously for the actions complained of herein.

9.      Deputy Chief **SUE ELLEN MONFRA** a person of the full age of majority and a resident of Jefferson Parish, State of Louisiana, in her individual and official capacity as the Corrections Administrator and Deputy Chief of the Jefferson Parish Sheriff's Office.  At all times described herein, **MONFRA** was a policy-maker for the Jefferson Parish Sheriff's Office (JPSO), and was responsible for the hiring, training, supervision, discipline and control of appropriate staff to maintain the care, custody, and control of prisoners in the custody of the JPSO.  She was also responsible for the supervision, administration, policies, practices, customs, operations of JPCC.  **MONFRA** was and is a final policy maker, and at all pertinent times was acting under color of law.  She is liable both directly and vicariously for the actions complained of herein.

3

10.     **JOHN** and **JANE DOE** deputies are adult citizens of the State of Louisiana and domiciled in the Eastern District of Louisiana.  At all pertinent times, **JOHN** and **JANE DOE** deputies were employed by Defendant **LOPINTO** as correctional officers and were acting under color of law.

### III.     STATEMENT OF FACTS

11.     On or about September 3, 2018, decedent Brian Alexander was a pretrial detainee at JPCC.  Brian Alexander was a 49-year-old man with a history of psychiatric problems that had previously resulted in inpatient hospitalizations.  These mental health problems were also the root cause of his incarceration at JPCC in 2018.

12.     On that date, Mr. Alexander was incarcerated on a tier with an individual named Press Shorter III.  Press Shorter, who was just 26 years old at the time, had an extremely violent history that included multiple assaults on law enforcement officers both outside and inside JPCC.  On information and belief, Press Shorter also had an extensive history of predatory behavior inside the jail, including assaulting other inmates while he was incarcerated.  On information and belief, officials at JPCC, including Defendant **MONFRA**, were well-aware that Press Shorter was a danger to both correctional officers and other inmates with whom he was incarcerated.  However, neither **MONFRA** nor other JPCC officials took appropriate steps to address the dangers posed to other inmates by Press Shorter.

13.     Furthermore, on information and belief, at all relevant times Defendants failed to have an effective classification system at JPCC that would reduce risk of inmate-on-inmate violence by classifying inmates according to safety threats.  At all pertinent times, Defendants did not segregate inmates who are known predators from other more vulnerable inmates likely to be victims.  As a result, inmates who were high security inmates and endangered the physical

safety of others were routinely housed with inmates who were low security and/or nonviolent. Additionally, inmates who suffer from serious mental health issues, such as Brian Alexander, are often at risk for victimization from other inmates. Despite this fact, JPCC failed to have effective classification systems that could protect mentally ill inmates like Brian Alexander from harm.

14.     In the alternative, Defendants **JOHN** or **JANE DOES** negligently or recklessly failed to properly classify inmates Press Shorter and/or Brian Alexander, thereby subjecting Brian Alexander to significant risk of harm.

15.     On information and belief, JPCC also suffered from significant staffing problems during the relevant time period. These staffing problems and shortages have resulted in a lack of supervision by deputies of inmates at the jail. This lack of supervision greatly exacerbates the risk of inmate-on-inmate violence at the jail because, as Defendants well know, inmates are aware that their conduct will not be monitored or punished.

16.     Indeed, according to recent media accounts, the falling numbers of deputies at the jail has coincided with an increase in violent incidents at the jail by over 50% from 2016 to the present. These violent incidents include batteries, aggravated batteries, and charges of resisting officers. On information and belief, the JPCC has averaged at least one violent incident per day over the past year. On further information and belief, the violent incidents most often involve attacks by one inmate against another, such as that which occurred in this case.

17.     The death of Brian Alexander is a tragic example of the types of violent incidents that are increasingly frequent at JPCC. On September 3, 2018, Brian Alexander was in the shower area of his tier. There, he encountered Press Shorter. On information and belief, Press Shorter attacked Brian Alexander without reason, striking him in the head. The blow caused

Brian Alexander to fall to the hard floor, where he hit his head again.  Mr. Alexander sustained a severe fracture to the skull and bleeding in his brain as a result of the attack.  A few days later, he died from his injuries.

18.     Press Shorter has been charged with manslaughter based on the death of Brian Alexander.  His case is awaiting trial.

19.     On information and belief, there was no deputy supervising Brian Alexander, Press Shorter, and the other inmates as they were attempting to take their showers.  On further information and belief, the lack of deputies supervising the shower area was the result of the declining numbers of deputies employed to work at the jail during this time.

20.     On information and belief, deputies **JOHN** and/or **JANE DOES** had been assigned to monitor the shower area and/or Brian Alexander's tier, but these defendants willfully, recklessly and/or negligently failed in their assigned duties, resulting in a significant risk of harm to the inmates entrusted to their care, custody, and control.  The attack on Brian Alexander was the result of these defendants' actions and inactions, as well as the failures of the policymaking defendants to institute appropriate classification systems and to ensure appropriate staffing levels.

21.     At all times mentioned herein, all the defendants named in their individual capacities were employed by the defendant, Sheriff **LOPINTO**, and were acting in the course and scope of their employment with defendant **LOPINTO**.

22.     On information and belief, Defendants **LOPINTO** and **MONFRA** developed and maintained policies and/or customs exhibiting deliberate indifference to the rights of persons in JPCC to due process and to be free from cruel and/or unusual punishment, which deliberate indifference caused the violation of Brian Alexander's rights and his death.

6

23.     On information and belief, at all times relevant to this suit, it was the policy and/or custom of Defendants **LOPINTO** and **MONFRA** to inadequately staff JPCC facilities, which allowed preventable violence among prisoners to occur due to lack of supervision.

24.     On information and belief, at all times relevant to this suit, it was the policy and/or custom of Defendants **LOPINTO** and **MONFRA** to inadequately supervise and train deputies, including the defendant deputies, thereby failing to discourage further constitutional violations by failing to provide adequate protection and violence prevention for prisoners in their custody. Defendants **LOPINTO** and **MONFRA** did not require appropriate in-service training or re-training of deputies who were known to have engaged in misconduct in failing to appropriately respond to violence and threats of violence.

25.     On information and belief, at all times relevant to this suit, it was the policy and/or custom of Defendants **LOPINTO** and **MONFRA** to inadequately respond to instances of misconduct and deputy failures to perform duties required to maintain the security of prisoners in his care.  Defendants **LOPINTO** and **MONFRA's** inadequate responses included a refusal to terminate, suspend, discipline, warn, or in any way punish and/or re-train deputies, including the defendant deputies, for incidents involving failures to perform duties, thereby failing to adequately discourage further constitutional violations by deputies, including the defendant deputies in this case.

26.     Defendants **LOPINTO** and **MONFRA** knew or should have known of prior failures to perform duties on the part of the defendant deputies in this case.  Defendants **LOPINTO** and **MONFRA** ignored these prior incidents and hired and/or retained these defendants nonetheless.  In the alternative, Defendants **LOPINTO** and **MONFRA** negligently hired and retained the individually named defendants in this case.

27.     Defendants **LOPINTO** and **MONFRA** are liable to the Plaintiffs for damages as a result of their failure to provide adequate staffing levels and staffing plans for the JPCC, which would have stemmed the rising number of violent incidents between inmates, and as a result of their failure to train and supervise the other defendants herein.

28.     Defendants **LOPINTO** and **MONFRA** knew or should have known of the rising levels of violence at JPCC and the chronic staffing problems that caused or contributed to this violence.  However, Defendants **LOPINTO** and **MONFRA** disregarded and downplayed the levels of violence and failed to take adequate steps to address protect inmates from harm.

29.     Defendants **LOPINTO** and **MONFRA**, by their failures to take adequate steps to address the rising levels of violence, in fact condoned, ratified and encouraged the violence occurring at JPCC, and they failed in their duty to protect individuals in their custody, including Brian Alexander.

30.     Defendants **LOPINTO** and **MONFRA** knew or should have known that the inadequate training JPCC staff received contributed to a pattern and practice of deputies failing to perform essential duties, including failing to stay at their assigned posts, resulting in a failure to protect individuals in his custody, including failure to protect Brian Alexander.

31.     Defendants **LOPINTO** and **MONFRA**, by their failure to properly supervise the individually named defendants, condoned, ratified, and encouraged the pattern and practice of failing to perform duties, including abandonment of posts, that contributes directly to failure to protect individuals in his custody, including Brian Alexander.  These actions and/or failures on the part of the Defendants **LOPINTO** and **MONFRA** show a deliberate indifference toward the constitutional rights of Brian Alexander and the plaintiffs in this case.

8

32.     As a result of the above-described policies, customs, actions and inactions, deputies of Sheriff **LOPINTO**, including the defendant deputies, knew that staffing at JPCC was inadequate to stem the level of violence at the jail, and that their actions would not be properly monitored by supervisory deputies and that misconduct would be tolerated rather than investigated and/or punished.

33.     The above-described policies and customs demonstrate deliberate indifference on the part of the policymakers, Defendants **LOPINTO** and **MONFRA**, to the constitutional rights of persons within JPCC, including Brian Alexander.  These policies customs, actions, and inactions were both the factual and legal cause of the violation of Brian Alexander's rights, his wrongful death, and the plaintiffs' damages, as alleged herein.

34.     All of the Defendants are liable to the Plaintiffs for compensatory and punitive damages.

35.     All of the Defendants are liable jointly, severally, and in solido for the Plaintiffs' injuries.

36.     The Defendants' actions were reckless, willful, wanton, and malicious, and constitute deliberate indifference to the rights of Brian Alexander and the Plaintiffs.

37.     Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of the plaintiffs described herein, but failed to do so.

### IV. CAUSES OF ACTION

38.     Plaintiffs repeat and re-allege each and every allegation of the complaint.

39.     *Constitutional Violations*. The Defendants, acting individually and together, under color of law, acted to violate Brian Alexander's right to due process, to be safe from harm while incarcerated, to be free from cruel and unusual punishment, and to equal protection of the laws

9

as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.  At all pertinent times, the defendants, acting individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional and civil rights of Brian Alexander and the Plaintiffs.

40.   *Constitutional Claim Against Defendants **LOPINTO** and **MONFRA***.  Defendants **LOPINTO** and **MONFRA**, acting individually and collectively, established, condoned, ratified and encouraged customs, policies, patterns, and practices that directly and proximately caused the deprivation of Brian Alexander's safety and his civil and constitutional rights, which resulted in his wrongful death and the Plaintiffs' damages herein.  Defendants **LOPINTO** and **MONFRA** knew of the rising levels of violence at JPCC and the concurrent staffing shortages which contributed to the violence.   Nevertheless, they continued to operate JPCC with minimal security staff, allowing an intolerable risk of harm to come to those held in custody, including Brian Alexander.  Defendants **LOPINTO** and **MONFRA** knew of deputies' failures to perform duties and abandonment of posts by deputies under their supervision, yet did nothing to train or discipline deputies who engaged in these behaviors.  At all pertinent times herein, Defendants **LOPINTO** and **MONFRA** acted unreasonably and with deliberate indifference and disregard for the safety of plaintiff.

41.   *State law Torts Against Defendant **LOPINTO***. At all times relevant hereto, all of the individually named defendants were acting within the course and scope of their employment with Defendant Sheriff **LOPINTO**. Therefore, the doctrine of respondeat superior applies for all state-law torts alleged in this Complaint and defendant **LOPINTO** is liable to the plaintiffs for the tortious acts of his employees, including but not limited to a failure to monitor, supervise, and prevent violence among the inmates under their care, custody, and control.

## V. DAMAGES

42.     As a result of the above-described civil rights violations and state law torts, the Plaintiffs, Jamie Morel, obo the minor J.A., and Hayden Alexander, suffered damages as follows:

    a.     Brian Alexander (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life.

    b.     The Plaintiffs, the minor and major sons of Brian Alexander, suffered emotional and mental pain and suffering, past, present, and future; loss of support; and the loss of love, affection, and companionship of their father, Brian Alexander.

43.     In addition to recovering damages, Plaintiffs seeks reasonable attorneys' fees in accordance with 42 U.S.C. § 1988, plus judicial interest, and for the Defendants to bear all costs of these proceedings.

## VI.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that after due proceedings are had there be judgment rendered herein in Plaintiffs' favor and against all Defendants individually and jointly, as follows:

    1.     Compensatory and punitive damages as prayed for herein;

    2.     Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988 and 42 U.S.C. § 12205, and all costs of these proceedings and legal interest;

    3.     All other relief as appears just and proper to this Honorable Court.

Respectfully submitted,

/s/ Stephen Haedicke
**STEPHEN J. HAEDICKE** (# 30537)
1040 Saint Ferdinand St.
New Orleans, LA 70117
(504)291-6990 Telephone
(504)291-6998 Fax
Stephen@haedickelaw.com

Attorney for Jamie Morel obo the minor, J.A.


**-AND-**

/s/ Gary W. Bizal
**GARY W. BIZAL** (#1255)
4907 Magazine St.
New Orleans, LA 70115
P: 504.525-1328
F: 504.525-1353

Attorney for plaintiff Hayden Alexander